IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DONALD E. MARSHALL,

                    Plaintiff,

          v.                              Civil Action No.
                                          6:14-CV-0797 (DNH/DEP)

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

_____

APPEARANCES:                     OF COUNSEL:

FOR PLAINTIFF:

ANTONOWICZ LAW FIRM              PETER W. ANTONOWICZ, ESQ.
148 West Dominick Street
Rome, New York 13440

FOR DEFENDANT:

HON. RICHARD S. HARTUNIAN        SERGEI ADEN, ESQ.
United States Attorney           Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Donald Marshall has commenced this action against defendant Carolyn W. Colvin, the Acting Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final determination of the agency concluding that he was not disabled at the relevant times and is therefore ineligible to receive supplemental security income ("SSI") benefits. Having applied the requisite, deferential standard of review, for the reasons set forth below, I recommend that judgment on the pleadings be granted to the defendant affirming the Commissioner's determination and dismissing plaintiff's complaint.

I.    <u>BACKGROUND</u>

Born in April 1964, plaintiff is currently fifty-one years old and was forty-nine years of age at the time of the administrative hearing in this matter. Administrative Transcript ("AT") 18, 157.[1] Plaintiff did not graduate from high school but did earn a GED degree. AT 47, 179, 363, 379, 405. Plaintiff lives in an apartment in Rome, New York, together with his girlfriend. AT 45, 297. Plaintiff does not possess a driver's license. AT 47. Plaintiff is left-hand dominant. AT 75, 377.

---

[1]    The administrative transcript, which consists of a compilation of medical records and other evidence that was before the agency at the time its determination in this matter was made and was filed by the Commissioner on October 10, 2014, Dkt. No. 10, will be hereinafter cited as "AT ___."

The record evidence regarding plaintiff's past work history is somewhat equivocal. *See, e.g.,* AT 216. It appears that plaintiff last worked in 2004. AT 168-69, 199. Plaintiff's past work included installing bus seats and working as a roofer, painter's assistant, groundskeeper, mason's assistant, shipping and receiving clerk, and special metals processor. AT 49, 199, 225.

Plaintiff suffers from several diagnosed medical conditions. In the past, he fractured both collarbones, although they have since healed. AT 51, 53, 291-92. Plaintiff has also fractured a left third metatarsal foot bone, although that is now also healed. AT 59-60, 392. Plaintiff experiences multiple medical issues, and reports suffering from pain in connection with his right shoulder, including right shoulder rotator cuff tendonitis with superior migration of the humeral head and rotator cuff tears, chronic, as well as a right humeral shoulder lesion.[2] AT 363, 392, 405. Plaintiff has also suffered a relatively modest left shoulder rotator cuff tear, which was surgically repaired in January 2013, by Dr. Kevin Setter. AT 373, 411, 413-15. Plaintiff's physical conditions also include degenerative changes in the lumbar, thoracic, and cervical spine areas. AT 285-87, 316-17, 324-31,

---

[2]     According to plaintiff's orthopedic specialist, Dr. Timothy Damron, the humeral lesion is not the source of plaintiff's right shoulder pain. AT 360, 363; *see also* AT 379.

347-53.

In addition to his physical conditions, a consultative psychiatrist has diagnosed plaintiff as suffering from a mild depressive disorder not otherwise specified ("NOS") and indicated that he may benefit from individual counseling, although plaintiff has not received any treatment for this condition. AT 299. At the time of the hearing before the ALJ, plaintiff was taking Naproxen and Tramadol, and reported having been previously prescribed Oxycodone and Hydrocodone for his pain. AT 67-68, 242-43. For treatment of his physical conditions, plaintiff has seen Dr. Mitchell Rubinovich,[3] as well as Dr. Timothy Damron and Dr. Kevin Setters, two orthopedic specialists with Upstate Orthopedics, and professionals with the New York Spine and Wellness Center. AT 356-81, 386-415. While plaintiff was referred for physical therapy to the Chestnut Commons Physical Therapy Rehabilitation Center by Dr. Rubinovich, plaintiff attended sessions only briefly during September 2011, reportedly without success.[4] AT 274-81.

In addition to his treatment, plaintiff also underwent a consultative

---

[3] The administrative record contains limited medical records regarding plaintiff's treatment by Dr. Rubinovich. AT 257-59, 282-87, 382-84.

[4] It also appears that Dr. Restituto Acosta treated plaintiff during July and August 2011. AT 260-73. Unfortunately, Dr. Acosta's notes are largely illegible. *See id.*

physical examination by Dr. Ammaji Manyam, on November 16, 2011, and a mental examination by Dr. Michael Alexander on December 7, 2011. AT 291-95, 297-300.

## II.    PROCEDURAL HISTORY

### A.    Proceedings Before the Agency

Plaintiff filed an application with the Social Security Administration on September 9, 2011, alleging that he became disabled on June 30, 2004, and requesting payment of SSI benefits. AT 11, 157-65. Following an initial rejection of plaintiff's application, a hearing was conducted on January 8, 2013, by Administrative Law Judge ("ALJ") Joseph Brinkley. AT 24-39. The hearing was adjourned, however, at plaintiff's request, in order to afford him an opportunity to secure legal representation. *Id.* A second hearing was held by ALJ Brinkley on May 29, 2013. AT 40-87. Despite the previous adjournment, plaintiff again appeared at that adjourned hearing without representation. AT 43-44. On June 7, 2013, ALJ Brinkley issued a written decision regarding plaintiff's application, in which he applied the familiar, five-step test for determining disability. AT 8-23. At step one, ALJ Brinkley concluded that plaintiff had not engaged in substantial gainful activity since he applied for SSI disability benefits. AT 13. At step two, the ALJ concluded that plaintiff suffers from several severe impairments as

defined under the regulations, including degenerative disc disease, shoulder joint arthritis, rotator cuff tears, status post left shoulder surgery, metatarsal fracture, depressive disorder, and substance abuse. *Id.* He went on to conclude, however, at step three that those impairments did not, either alone or in combination, meet or medically equal any of the listed, presumptively disabling conditions set forth in the Commissioner's regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1. AT 13-14.

After surveying the available medical and other evidence, ALJ Brinkley next concluded that plaintiff retains the residual functional capacity ("RFC") to perform light work, as defined in the regulations,[5] except that he

> can occasionally climb ramps/stairs, balance, kneel, and stoop; can never crawl, crouch, or climb

---

[5]     By regulation, light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

> ladders, ropes, or scaffolds; can occasionally reach
> in all directions with the bilateral upper extremities;
> can frequently handle, finger, feel, and manipulate
> objects with the bilateral upper extremities; must
> avoid concentrated exposure to wetness,
> vibrations, extreme hot or cold temperatures, and
> the workplace hazards including unprotected
> heights, dangerous machinery, and uneven terrain;
> is limited to simple, routine, repetitive tasks and to
> work that is not fast paced, high production quotes
> or assembly line jobs.

AT 14-15. After explaining his reasoning for making that RFC

determination, ALJ Brinkley concluded that plaintiff is unable to meet the

exertional demands of the positions that he previously occupied. AT 18. At

step five, the ALJ consulted the medical vocational guidelines set forth in

the regulations ("grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and

concluded that a finding of no disability would be required under Medical-

Vocational Rule 202.21. *Id.* In light of the existence of additional limitations

that could potentially erode the job base upon which the grids are

predicated, however, the ALJ went on to elicit the testimony of a

vocational expert and, based on that testimony, concluded that there is

available work that plaintiff is capable of performing notwithstanding his

limitations, including as an usher, sandwich board carrier, and counter

clerk. AT 18-19. The ALJ therefore concluded that the plaintiff was not

disabled at any relevant time and, accordingly, denied his application for

SSI benefits. AT 19. The ALJ's decision became a final determination of the agency on June 6, 2014, when Social Security Administration Appeals Council denied review of that determination. AT 1-4.

B.    Proceedings in This Court

Plaintiff timely commenced this action on July 1, 2014. Dkt. No. 1. Issue was thereafter joined on October 9, 2014, by the defendant's filing of an answer, accompanied by a compilation of the record that was before the agency. Dkt. Nos. 9, 10. With the filing of briefs on the part of both parties, Dkt. Nos. 13, 14, the matter is now ripe for determination, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(d). *See also* Fed. R. Civ. P. 72(b).[6]

III.    DISCUSSION

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether

---

[6]    This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly General Order No. 43), which was issued by the Hon. Ralph W. Smith, Jr., then-Chief United States Magistrate Judge, on January 28, 1998, and amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003. Under General Order No. 18, in an action such as this, once issue has been joined and the parties have submitted their briefs, the court considers the case as if both parties have submitted a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone*, 70 F. Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401(1971) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (quoting *Consol.Edison Co.*, 308 U.S. at 229); *Martone,* 70 F. Supp. 2d at 148 (quoting *Richardson*). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

      B.    <u>Disability Determination: The Five Step Evaluation Process</u>

      The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [be] of such severity that he is not only unable
> to do his previous work but cannot, considering

> his age, education, and work experience,
> engage in any other kind of substantial gainful
> work which exists in the national economy,
> regardless of whether such work exists in the
> immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether
> he would be hired if he applied for work.

*Id.* at § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need not proceed any further. *Id.* at §§ 404.1520(b), 416.920(b). If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his physical or mental ability to perform basic work activities. *Id.* at §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id. at* §§ 404.1520(d), 416.920(d), Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Id.* at §§ 404.1520(d), 416.920(d);

*see also Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work. *Id.* at §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Burgess v. Astrue*, 537 F.3d 117, 118 (2d Cir. 2008); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work. *Burgess*, 77 F.3d at 118; *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    <u>The Evidence in This Case</u>

In support of his appeal, plaintiff argues that (1) the Commissioner improperly concluded that one of plaintiff's severe impairments was

substance abuse, (2) the Commissioner failed to properly develop the record, and (3) the Commissioner did not evaluate the available opinion evidence in accordance with the relevant regulations. *See generally* Dkt. No. 13.

### 1.  Substance Abuse

Plaintiff contends that ALJ Brinkley erred in finding, at step two of the disability protocol, that among the severe limitations from which he suffers is substance abuse. Dkt. No. 13 at 8-10. He notes that there is no medical evidence in the record containing a diagnosis of substance abuse or alcoholism, and speculates that the ALJ's finding in this regard tainted the balance of his determinations, including as it relates to plaintiff's credibility. *Id.* He further notes that a report of the consultative physician, Dr. Ammaji Manyam, "is laced with judgmental statements with regard to the abuse of alcohol without any evidence of alcohol use or abuse had [sic] taken place." *Id.* at 9. Plaintiff argues that the report of examining psychiatrist, Dr. Alexander, makes no reference to such matters.[7] *Id.*

As Dr. Manyam noted in his report, plaintiff admitted to a history of alcoholism dating back prior to 1982, for which he did not seek

---

[7]     Plaintiff mistakenly claims that both examinations occurred on the same date. Dkt. No. 13 at 9. Plaintiff was examined by Dr. Manyam on November 16, 2011, AT 291, while Dr. Alexander's examination occurred later, on December 7, 2011, *id.* at 297.

rehabilitation, and plaintiff's breath smelled of alcohol during the examination. AT 292-93. While there does not appear to be any medical diagnosis in the record specifically reflecting that plaintiff's alcohol abuse presently persists, one could arguably infer as much if Dr. Manyam's observation from the examination is credited and if plaintiff's disclosure that he continues to drink alcohol is taken into consideration.

In any event, the fact that substance abuse is listed as a condition from which plaintiff suffers at step two, even if unsupported, represents harmless error. "When there is medical evidence of an applicant's drug or alcohol abuse, the 'disability' inquiry does not end with the five-step analysis." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012). Instead, the Contract with Advancement Act, adopted by Congress in 1996, dictates that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(A)(3)(J); *see also* 420 C.F.R. § 416.935; *Cage*, 692 F.3d at 123 ("The critical question is whether the SSA would find the claimant disabled if she stopped using drugs or alcohol." (quotation marks and alterations omitted)). In such an instance, the burden of demonstrating that

substance abuse is not a contributing factor material to the disability determination rests with the claimant. *Cage*, 692 F.3d at 123.

In this case, because plaintiff was found not to be disabled, any contributing effects of alcoholism toward limitations on performing work related functions is irrelevant to the ultimate finding of no disability. I therefore recommend that plaintiff's first argument in support of his request to overturn the Commissioner's determination be rejected.[8]

2.  Failure to Develop the Record

By statute, an ALJ is under an obligation to not only to develop a claimant's complete medical history for at least twelve months prior to the filing of an application for benefits, "but also to gather such information for a longer period if there [is] reason to believe that the information [is] necessary to reach a decision." *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998) (citing 42 U.S.C. § 423(d)(5)(B) as incorporated by 42 U.S.C. § 1382c(a)(3)(G) and 20 C.F.R. § 416.912(d)). This obligation exists regardless of whether the claimant is represented by counsel or a paralegal, or instead is proceeding *pro se*, in which case the duty is

---

[8]    To the extent that plaintiff advances a broader challenge to the Commissioner's finding of lack of credibility, I find that the ALJ undertook the appropriate analysis regarding credibility and set forth a basic outline disclosing the reasons for rejecting plaintiff's statements in his written determination. AT 17. Those findings are supported by substantial evidence, including the consultative report of Dr. Douglas Chang. AT 335.

heightened. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. (1996); *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984). The duty of an ALJ to develop the record is particularly acute when there are gaps in information from a claimant's treating physician. *Dickson v. Astrue*, No. 06-CV-0511, 2008 WL 4287389, at *13 (N.D.N.Y. Sept. 17, 2008) (Mordue, J.).

In this case, the relevant time period extended through June 7, 2013, the date of the ALJ's decision. The record contains documents associated with plaintiff's treatment through January 2013. AT 386-415. The record reveals that the ALJ discussed with the plaintiff, who was not represented at the time, the need to obtain records associated with ongoing treatment, including updated medical records from Dr. Rubinovich. AT 35-37. The ALJ also encouraged plaintiff to contact him or the agency for assistance in obtaining the revised records if necessary. AT 38. Despite this, the plaintiff did not avail himself of the agency's offer, nor did he obtain additional records from his treating sources. Moreover, plaintiff, who is now represented by counsel, has not invoked his right to acquire and offer new evidence as being material to his condition during the relevant time period. 42 U.S.C. § 405(g); *see, e.g., Rivera v. Colvin*, 592 F. App'x 32, 32-33 (2d Cir. 2015).

I have reviewed the record carefully and find no gaps or other factors that would have required the ALJ to reach out to treating sources and acquire additional information concerning plaintiff's medical condition. I therefore recommend that this challenge to the Commissioner's determination also be rejected.

### 3. Treating Sources

Dr. Rubinovich, one of plaintiff's several treating sources, completed a form entitled "MEDICAL EXAMINATION FOR EMPLOYABILITY ASSESSMENT, DISABILITY SCREENING, AND ALCOHOLISM/DRUG ADDICTION DETERMINATION" concerning the plaintiff. AT 258-59, 382-83, 384-85. In it, Dr. Rubinovich indicated that plaintiff is "very limited" in functional areas of walking, standing, sitting, lifting, carrying, pushing, pulling, bending, seeing, hearing, speaking, stairs, other climbing, and "other." AT 259. Dr. Rubinovich also reported in that form that plaintiff is "100% disabled." *Id.* He indicated that the medical conditions causing plaintiff's limitations include "cervical, thoracic, lumbar spine, bilateral shoulders" and listed between one and three months as the "expected duration from present" of the conditions. AT 258. Dr. Rubinovich's opinions were discounted by the ALJ who "afford[ed] limited weight to th[at] assessment, as it is not well-supported by clinical findings, and the

diagnoses on th[e] form are vague." AT 16. Plaintiff maintains that the ALJ erred in discounting this opinion. Dkt. No. 13 at 11-12.

"With respect to the nature and severity of [a claimant's] impairment(s), the SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."[9] *Burgess*, 537 F.3d at 128 (internal quotation marks and alterations in original, citations omitted). "According to this rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" *Burgess*, 537 F.3d at 128 (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino*, 312 F.3d at

---

[9]     The regulation that governs treating physicians provides as follows:

> Generally, we give more weight to opinions from your treating sources . . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. § 404.1527(c)(2); *see also* 20 C.F.R. § 416.927(c)(2).

588. Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner. *Veino*, 312 F.3d at 588.

If the ALJ does not give controlling weight to a treating source's opinion, he must apply several factors to determine what degree of weight should be assigned to the opinion, including (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the medical source has supported his or her opinion, (4) the degree of consistency between the opinion and the record as a whole, (5) whether the opinion is given by a specialist, and (6) other evidence which may be brought to the attention of the ALJ. 20 C.F.R. §§ 404.1527, 416.927. In addition, if the ALJ chooses to reject a treating physician's opinions, he must articulate his reasons for doing so. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ's failure to apply these legal standards when considering a treating physician's opinions constitutes a proper basis to reject the ALJ's determination. *Johnson* 817 F.2d at 986; *Barnett*, 13 F. Supp. 2d at 318.

The extreme limitations noted by Dr. Rubinovich, even if they were expected to persist for a sufficient duration to qualify as disabling, are wholly unsupported. The record contains no significant treatment notes

from Dr. Rubinovich, and it appears that he may have examined plaintiff only once, although plaintiff did consult with a nurse practitioner in the doctor's office on at least two occasions in 2011. AT 283-84. The limitations expressed by Dr. Rubinovich are at odds with reports from other treating specialists, including Dr. Setter and Dr. Damron, neither of whom expressed any opinions suggesting that plaintiff is significantly limited in his ability to meet the exertional requirements of light work. AT 356-81, 386-415. Indeed treatment notes from those specialists appear to support the finding that plaintiff's shoulders are both stable and he has "excellent range of motion" in his left shoulder and "limited range of motion" in his right. AT 373, 399. Following an examination on June 18, 2012, Dr. Damron noted that plaintiff has resisted "additional physical therapy," adding that, when asked whether he wanted to attend further physical therapy, plaintiff was "quick to demonstrate . . . that he can do a fair amount on his own with about 90 degrees of abduction and forward flexion." AT 360, 400. In addition, the less restrictive RFC finding of the ALJ is supported by the consultative report of Dr. Manyam, which is entitled to at least some weight. AT 291-95; *see* 20 C.F.R. § 1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); *Gonzalez v. Apfel*, 113 F. Supp. 2d 580, 589 (S.D.N.Y. 2000)

(lending "limited weight" to the consultative examiner's opinion).

Although there are some statements in plaintiff's medical record from physical therapists suggesting that plaintiff has greater limitations than discerned by the ALJ, it is well-established, that a physical therapist is not an acceptable medical source and, therefore, the opinions rendered by plaintiff's therapists are not entitled to controlling weight. 20 C.F.R. § 416.913(d)(1); *Diaz v. Shalala*, 59 F.3d 307, 313-14 (2d Cir. 1995) ("[T]he ALJ has the discretion to determine the appropriate weight to accord the chiropractor's opinion based on all the evidence before him.").

In sum, the radical limitations stated by Dr. Rubinovich are at odds with opinions of other medical sources, including the two orthopedic specialists, Dr. Damron and Dr. Setter, who treated plaintiff. Accordingly, the ALJ properly discounted Dr. Rubinovich's opinions. I therefore recommend that plaintiff's third argument in support of his request for judicial review be found to be without merit.

IV.    SUMMARY AND RECOMMENDATION

Having carefully reviewed the record that was before the agency in light of the arguments raised by the plaintiff and against the governing deferential standard of review as a backdrop, I conclude that the ALJ in this matter applied the proper legal principles and his determination is

supported by substantial evidence.[10] Although having concluded that the ALJ's determinations are supported by substantial evidence, I did find troubling the obvious adversarial tenor of the hearing, during which the plaintiff, who was unrepresented by counsel, was challenged on several occasions by the ALJ, particularly concerning his alcohol use. Based on my extensive review of the record, however, I find no reason to suspect that the ALJ's hostility infected his decision and further conclude his determinations are fully supported by the record. Accordingly, it is hereby respectfully

RECOMMENDED that defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's determination finding that plaintiff was not disabled at the relevant times, and thus ineligible for SSI benefits, be AFFIRMED, and plaintiff's complaint in this matter be DISMISSED.

---

[10]     Plaintiff argues that it was error for the agency to retain an independent consultative examiner without first returning to plaintiff's treating source, Dr. Rubinovich, for elaboration. This contention was first raised during oral argument and is not contained in plaintiff's brief. Accordingly, the argument has been waived. Even assuming that the argument were properly before the court, however, it lacks merit. Although the Commissioner is required to fully develop the administrative record, and, accordingly, must try to acquire all medical records and evidence from the treating physician before obtaining a consultative examination, there is no duty to do so when "there are no obvious gaps in the administrative record, or where the medical record is simply inconsistent with a treating physician's opinion. "*Genovese v. Astrue*, No. 11-CV-2054, 2012 WL 4960355 4960355, at *19-20 (E.D.N.Y. Oct. 17, 2012) (citations omitted). As I previously noted, I find no fatal gaps in the record that was before the agency.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:     September 1, 2015
           Syracuse, New York